IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JERMAINE YOUNG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.   18-cv-1316-RJD |
| ) | |
| DARREN WILLIAMS, RONALD BAYLER, ) | |
| MICHAEL HUGHES, JEFFREY KIDD, and ) | |
| NICK PUCKETT, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Jermaine Young, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit under 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center. More specifically, Plaintiff alleges he was met with excessive force when prison officials responded to his request for crisis intervention and mental health treatment on June 15, 2017. Plaintiff is proceeding in this matter on his Amended Complaint setting forth the following claims (Doc. 37):

>  Count One:   Eighth Amendment claim against Defendants Williams, Hughes, Kidd, and Bayler for using excessive force against Plaintiff and/or failing to protect him from the unlawful use of force by prison officials on June 15, 2017.
>
>  Count Two:   Eighth Amendment deliberate indifference claim against Defendants Williams, Hughes, and Bayler for ignoring Plaintiff's requests for treatment for the wound on his arm that was actively bleeding on June 15, 2017.
>
>  Count Three:   Eighth Amendment deliberate indifference claim against Defendant Puckett for failing to provide Plaintiff with mental health treatment when he complained of auditory delusions on June 15, 2017.

Defendants filed a motion for summary judgment on July 28, 2020 (Doc. 59). Plaintiff filed his response on August 18, 2020 (Doc. 63). On January 26, 2021, Plaintiff filed an expedited motion for stay of order (Doc. 67), to which Defendant responded on January 27, 2021 (Doc. 68). These motions are now before the Court. For the reasons set forth below, Plaintiff's motion for stay of order is **DENIED** and Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

## Factual Background

The claims at issue relate to an incident that occurred on June 15, 2017, while Plaintiff was incarcerated at Lawrence Correctional Center (Deposition of Plaintiff Jermaine Young, Doc. 60-1 at 10, 14). Plaintiff had recently been moved to 5 house, B gallery and had a new cellmate, who Plaintiff described as old and "nasty" (*Id.* at 17, 60). Plaintiff was having difficulty with certain personal issues at the time, so he wanted to leave his cell (*Id.* at 60). He called to Defendant Officer Puckett, who responded to Plaintiff's cell (*Id.* at 18, 60; Declaration of Nicholas Puckett, Doc. 60-2 at ¶¶ 5-6). Plaintiff told Defendant Puckett that he was hearing voices that were telling him to harm himself and his cellmate (*Id.* at ¶ 6; Doc. 60-1 at 18). At his deposition, Plaintiff testified that he only told Puckett he was hearing voices so he could see mental health, but he was not actually having auditory hallucinations[1] (*Id.* at 60-61). Based on these statements, Puckett needed to remove Plaintiff from his cell (Doc. 60-2 at ¶ 70). Puckett told Plaintiff to cuff up, which was done without incident, and Puckett took Plaintiff to the showers (Doc. 60-1 at 18; Doc. 60-2 at ¶ 8). Puckett called for a supervisor and Defendant Lieutenant Williams, who was also on

---

[1] Plaintiff contradicts this testimony in his declaration dated August 16, 2020 submitted in support of his response to Defendants' motion for summary judgment (*see* Doc. 63-2 at 1). The Court declines to consider these statements under the "sham" affidavit rule. In this circuit, the sham-affidavit rule prohibits a party from submitting an affidavit that contradicts the party's prior deposition or other sworn testimony. *James v. Hale*, 959 F.3d 307, 316 (7th Cir. 2020).

the crisis team at that time, came to the shower (Doc. 60-1 at 20; Doc. 60-2 at ¶ 8-9). When Defendant Williams arrived, Puckett removed his cuffs from Plaintiff and watched Williams cuff Plaintiff (*Id.* at ¶ 10). Puckett then went back to his post as the gallery officer on 5 house (Doc. 60-2 at ¶ 11). Puckett subsequently authored an incident report describing the events that had occurred (*Id.* at ¶ 12).

Upon his arrival at 5 house, Defendant Williams told Plaintiff he was going to segregation due to the threat he made on his cellmate, and that he would be placed on crisis watch due to the statements Plaintiff made about his own life (Declaration of Darren Williams, Doc. 60-3 at ¶ 12). Plaintiff testified Williams said he was sick of Plaintiff's "shit" and that he was taking him to segregation (Doc. 60-1 at 20). While Williams was escorting Plaintiff to segregation, they encountered Defendant Officer Hughes, who proceeded to assist with opening gates and doors on the walk to the segregation building (*Id.* at 23; Doc. 60-3 at ¶ 14; Declaration of Michael Hughes, Doc. 60-4 at ¶ 6).

Defendant Williams and Hughes placed Plaintiff in the showers upon his arrival to the segregation unit (Doc. 60-1 at 23-24; Doc. 60-3 at ¶ 15). Plaintiff testified that Williams, Hughes, and Kidd were there, along with four additional, unknown officers (Doc. 60-1 at 24). Defendant Hughes disputes this, asserting that once Plaintiff was placed in the segregation shower he walked off of the unit, had a brief conversation with an unknown officer in the foyer, left the segregation building, and returned to his post (Doc. 60-4 at ¶¶ 9-10). It is not disputed that after Plaintiff was placed in the segregation shower Defendant Williams instructed Plaintiff to place his hands through the cuffing port, or "chuck hole" so Williams could remove the restraints on Plaintiff's wrists (Doc. 60-1 at 25; Doc. 60-3 at ¶ 16). Williams attests that as he was removing the handcuffs from Plaintiff's right wrist, Plaintiff attempted to pull his left arm forward, toward the

back of the cell while the cuff was still secured to his wrist (*Id.* at ¶ 18). In an attempt to offset Plaintiff's efforts, Williams pulled Plaintiff closer to the port so that the cuff could be removed (Doc. 60-3 at ¶ 19). Plaintiff testified, however, to a different set of circumstances. Specifically, Plaintiff testified that after he placed his hands through the chuck hole, Defendant Williams "snatched" him and pulled hard on his handcuffs (Doc. 60-1 at 26). At this time, Defendant Hughes grabbed one of Plaintiff's arms (*Id.*). Plaintiff testified Defendants were pulling down on his cuffs, and "smashing" him (*Id.* at 28). Once the handcuffs were removed, Plaintiff noticed his arm had been cut and he was bleeding (*Id.* at 26). Soon after Williams removed Plaintiff's handcuffs, Defendant Supervising Officer Bayler arrived and Williams left (*Id.* at 29).

Defendant Kidd attests he was contacted and informed that Plaintiff was refusing to comply with a strip search (Declaration of Jeffrey Kidd, Doc. 60-5 at ¶ 4). Although Plaintiff's testimony seems to indicate that Kidd was there throughout the incident, Kidd attests that he only reported to the shower after being informed Plaintiff was refusing a strip search (*Id.*). In any event, Plaintiff testified that Kidd asked Plaintiff if he needed medical attention, and Plaintiff indicated in the affirmative (Doc. 60-1 at 29). Kidd observed a small cut and a small amount of blood on Plaintiff's arm (Doc. 60-5 at ¶ 8). A medical technician arrived and looked at Plaintiff's arm while he was still in the shower (Doc. 60-1 at 30). The medical technician told Plaintiff the cut was not bad, and she would just "wipe it off" (*Id.* at 31).

Prior to the medical technician arriving, Plaintiff was being ordered to strip from his clothing and don a segregation jumpsuit (*Id.* at 26, 33; Doc. 60-5 at ¶ 5). Plaintiff testified that he would not strip out until he was seen by medical (Doc. 60-1 at 26, 32). After the medical technician came, Plaintiff testified he was "roughed up," despite telling Bayler and Kidd that he would take his clothes off (*Id.* at 33-36). More specifically, Bayler was holding Plaintiff's cuffs

tightly, and Bayler, along with Kidd and Hughes, were pushing and slamming Plaintiff against the wall (*Id.* at 33-34, 36). Defendants dispute Plaintiff's testimony as to the incident. As mentioned above, Hughes attests that after Plaintiff was escorted to the segregation building by Defendant Williams and placed inside of the secure shower, he left the segregation unit (Doc. 60-4 at ¶¶ 9-10). Kidd attests that he reported to the showers in the segregation unit to speak with Plaintiff after he was informed that Plaintiff was refusing to comply with a strip search (Doc. 60-5 at ¶¶ 4-5). Kidd further attests Plaintiff continued to refuse a strip search and Kidd returned to his office to inform Defendant Major Bayler of the same (*Id.* at ¶ 10). After Kidd notified Bayler, Kidd stayed in his office to complete paperwork regarding Plaintiff's assignment to a segregation cell and Bayler responded to the segregation showers (*Id.* at ¶ 13; Declaration of Ronald Bayler, Doc. 60-6 at ¶¶ 4-5). While Bayler was near the secure shower where Plaintiff was located, he was informed by a member of the security staff that a member of the medical personnel told Plaintiff that his arm was fine (*Id.* at ¶ 6). Bayler then gave a direct order for Plaintiff to strip out, which he refused (*Id.* at ¶ 7). Bayler advised Plaintiff that if he refused to voluntarily strip out, he would be forcibly stripped out (*Id.* at ¶ 8). According to Bayler, Plaintiff then complied with the strip out order and was given a smock because Plaintiff was placed on crisis watch (*Id.* at ¶ 9). Bayler did observe a scrape on Plaintiff's arm, but did not see any blood running down his arm or any blood pooling on the floor of the shower (*Id.* at ¶ 10). Plaintiff was secured and taken to his segregation cell (*Id.* at ¶ 12).

Plaintiff testified that after he was taken to his cell he stopped another officer and asked for a medical technician (Doc. 60-1 at 39). The officer told Plaintiff he would take him to healthcare, and Plaintiff was seen by a nurse about an hour later (*Id.* at 40-42). In the healthcare unit, Plaintiff saw a nurse who recommended that he be taken to the hospital for stitches (*Id.* at 45-46). He

received stitches at the hospital that evening (*Id.* at 46).

## Summary Judgment Standard

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## Discussion

***Count One: Eighth Amendment excessive force and failure to protect claim against Defendants Williams, Hughes, Kidd, and Bayler***

The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). "In cases involving the claimed use of excessive force, 'the core judicial inquiry' is 'whether force was applied in a

good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm'." *Outlaw*, 259 F.3d at 837 (quoting *Hudson*, 503 U.S. at 7). "In conducting this inquiry, a court must examine a variety of factors, including 'the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner.'" *Id.* With regard to the last factor, a plaintiff need not demonstrate a significant injury to state a claim for excessive force; however, "a claim ordinarily cannot be predicated on a *de minimis* use of physical force." *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (emphasis added) (citing *Hudson*, 503 U.S. at 5).

In that same vein, the Eighth Amendment also imposes duties on prison officials who must provide humane conditions of confinement and must "take reasonable measures to guarantee the safety of inmates." *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). In order to state a Section 1983 claim against prison officials for failure to protect, a plaintiff must establish: (1) that he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) that the defendants acted with "deliberate indifference" to his health or safety. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834)).

To satisfy the first prong, a plaintiff must show that he not only experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that the serious harm might actually occur. *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). Ultimately, the question is whether the plaintiff was exposed to a sufficiently substantial risk of serious damage to his future health." *Id.*

### Defendants Darren Williams

Plaintiff alleges Defendant Williams used excessive force against him on June 15, 2017

while Defendant was uncuffing Plaintiff[2]. Defendant Williams asserts that the action he took to hold Plaintiff still and retrieve his handcuffs was taken to ensure Plaintiff could not become a threat to himself or others as Plaintiff was attempting to move away from security staff with an unlocked pair of metal cuffs. Simply put, Williams contends the force used was commensurate with the circumstances and he only took action to maintain control of the handcuffs.

Notably, the central inquiry in claims of excessive force is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). In viewing the evidence in the light most favorable to Plaintiff, the Court cannot find, as a matter of law, that Defendant Williams' pulling of Plaintiff's handcuffs that resulted in injury to Plaintiff's arm necessitating stitches was applied in good faith. Specifically, if the Court credits Plaintiff's testimony, which it must at this juncture, the application of force applied by Defendant Williams was excessive and resulted in a notable injury to Plaintiff. The Court finds this decision rests on the genuine dispute concerning whether Plaintiff was complying with orders to "uncuff," as Plaintiff attests, or whether Plaintiff was pulling away from Williams while he was attempting to remove Plaintiff's handcuffs, as attested to by Defendant Williams. Because there is a genuine issue as to a material fact, the Court denies Defendant Williams' motion for summary judgment as to Count One.

The Court also rejects Defendant Williams' qualified immunity argument. At the time of the events in question, it was clearly established that employing force sufficient to cause an arm laceration requiring stitches while uncuffing an inmate complying with orders implicates an inmate's constitutional rights.

---

[2] There does not appear to be any dispute that Defendant Williams left the segregation building after uncuffing Plaintiff and had no part in the strip search that was later conducted.

**Defendant Michael Hughes**

Plaintiff alleges Defendant Hughes acted with excessive force in pulling his arm while Defendant Williams uncuffed him on June 15, 2017, resulting in a cut to his arm. Plaintiff also alleges Hughes employed excessive force in assisting in the strip search on that same date.

With regard to the cuffing incident, the Court's analysis concerning Hughes is similar to that of Williams. Hughes attests he left the segregation unit soon after Plaintiff was placed in the shower and was therefore not involved in removing the handcuffs  However, Plaintiff has presented evidence that Hughes remained with Williams while he was uncuffing Plaintiff and grabbed and pulled on his arm, despite Plaintiff complying with orders to uncuff, and, as a result, he sustained a laceration to his arm that required stitches. Similar to Williams, the Court cannot find, as a matter of law, that Defendant Hughes' pulling of Plaintiff's arm that resulted in injury was a reasonable application of force if, as Plaintiff testifies to, Plaintiff was complying with orders to uncuff.

Plaintiff further asserts Defendant Hughes was involved in the strip search that occurred after he was uncuffed by Williams. Although details are sparse, Plaintiff testified that Hughes was pushing and slamming him against the wall, along with Kidd, while Bayler was holding his handcuffs. There is no indication about the specific type of force employed or how many times Plaintiff was pushed against the wall. There is no evidence Plaintiff sustained any injury as a result of this incident. As mentioned above, the Court must consider various factors in determining whether the force applied was reasonable. In this instance, the lack of any injury informs the Court's determination about the amount of force applied. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) ("The extent of injury may also provide some indication of the amount of force applied."). The Court further notes the undisputed evidence indicates Plaintiff refused an order to

doff at least once, even while recognizing Plaintiff was refusing the order until he received medical attention for the cut on his arm. This fact, along with the lack of any injury or specificity regarding the force employed, is sufficient to find the force used was not excessive. *See id.* at 38 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.") (internal citations omitted).

For these reasons, the Court denies Defendant Hughes' motion for summary judgment as to Count One related to his part in removing Plaintiff's handcuffs, but grants Defendant Hughes' motion as to Count One related to his part in stripping Plaintiff out of his clothes.

The Court also rejects Defendant Hughes' qualified immunity argument concerning the cuffing incident. At the time of the events in question, it was clearly established that employing force sufficient to cause an arm laceration requiring stitches while uncuffing an inmate complying with orders implicates an inmate's constitutional rights.

**Defendant Jeffrey Kidd**

Plaintiff's claim against Kidd is premised on both Kidd's failure to intervene during the cuffing incident with Williams and Hughes, and his involvement in forcing Plaintiff to strip his clothing by slamming and pushing him into the wall.

First, Plaintiff's testimony regarding Kidd's presence during the cuffing incident is sparse. Plaintiff testified Kidd was present when he arrived at the segregation showers (a point disputed by Kidd), but there is no evidence he was present or saw Williams and Hughes while they employed force to remove the handcuffs. Due to the lack of evidence concerning Kidd's knowledge or involvement in the removal of the handcuffs, the Court cannot find he failed to protect Plaintiff from a substantial risk of serious harm and he is entitled to summary judgment as to this claim.

The Court also considers Kidd's role in the strip search conducted on June 15, 2017. In

the light most favorable to Plaintiff, the evidence establishes that Kidd, along with Hughes, was "pushing and slamming" Plaintiff against the wall while Bayler was holding Plaintiff's handcuffs. Similar to the Court's reasoning with Defendant Hughes, the Court cannot find the force employed was excessive. Again, Plaintiff had refused at least one order to strip his clothing and this, along with the lack of specificity of the force used and lack of any injury, results in a finding that Kidd is entitled to summary judgment as to Count One concerning his part in stripping Plaintiff from his clothing.

The Court need not consider Defendant Kidds' qualified immunity argument as to Count One because it finds that Kidd did not violate Plaintiff's constitutional rights.

**Defendant Ronald Bayler**

Plaintiff's claim against Bayler is premised on his actions taken to strip search Plaintiff on June 15, 2017[3]. The evidence in the light most favorable to Plaintiff indicates that Bayler held Plaintiff's cuffs tightly and "roughed" Plaintiff up, shoving him while he was in the shower. Again, similar to the Court's finding with regard to Defendants Kidd and Hughes, in consideration of the relevant factors, there is insufficient evidence for a reasonable jury to find Bayler acted with excessive force. Plaintiff had refused at least one order to strip and Plaintiff incurred no injury as a result of the pushing and shoving. Given these circumstances, and noting the lack of evidence concerning Bayler's specific use of any force, summary judgment must be granted in favor of Bayler as to Count One.

The Court need not consider Defendant Bayler's qualified immunity argument as to Count One because it finds that Defendant Bayler did not violate Plaintiff's constitutional rights.

---

[3] There does not appear to be any evidence that Defendant Bayler was involved in the cuffing incident as Plaintiff testified that Bayler arrived after Williams removed his handcuffs.

***Count Two:   Eighth Amendment deliberate indifference claim against Defendants Williams, Hughes, and Bayler***

Plaintiff alleges Defendants Williams, Hughes, and Bayler ignored his requests for treatment for the wound to his arm that he incurred on June 15, 2017.  Defendants assert they are entitled to summary judgment on this claim because Plaintiff did not have a serious medical condition and he was immediately seen by a medical professional.  Defendants also assert Plaintiff cannot provide any evidence establishing Defendants were aware the treatment provided to Plaintiff was blatantly inappropriate.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind."  *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of

mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

Although Defendants mention their position that Plaintiff did not have a serious medical need, they did not develop this argument and the Court finds that a laceration that requires stitches from a medical professional could be found by a reasonable jury to constitute a serious medical condition.

Next, the Court considers Defendants' argument that they were not deliberately indifferent to Plaintiff's injury asserting there is no evidence they ignored any request for treatment and the injury was quickly addressed by a medical professional. The Court agrees. First, with regard to Williams, there is no evidence he was informed Plaintiff had suffered an injury or was aware Plaintiff's arm was bleeding. Indeed, the undisputed evidence indicates Williams left the segregation unit soon after he uncuffed Plaintiff and there is no indication Plaintiff notified

Williams he needed medical care.

With regard to Defendant Hughes, there is again no evidence he was informed Plaintiff had suffered an injury or was aware Plaintiff's arm was bleeding. Although Plaintiff's testimony seems to indicate Hughes remained in the area following the cuffing incident due to his purported involvement in the forcible strip search, proximity to Plaintiff is insufficient. Hughes was not informed of any medical need and, therefore, he was not required to respond.

Finally, the Court considers Defendant Bayler and finds he did not act with deliberate indifference to Plaintiff's injury. Although not particularly clear based on the evidence, it appears Bayler came to the segregation shower where Plaintiff was located around the time Defendant Kidd had a medical technician check Plaintiff's arm. Bayler attests that he was informed by a member of the security staff that a member of the medical personnel told Plaintiff his arm was fine prior to Bayler's arrival, and Bayler is entitled to defer to the judgment of health professionals. *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Plaintiff has not presented any evidence disputing Bayler's contention that he was informed that Plaintiff had been seen by medical.

For these reasons, Defendants Williams, Hughes, and Bayler are entitled to summary judgment as to Count Two. The Court need not consider Defendants' qualified immunity argument as to Count Two because it finds that Defendants did not violate Plaintiff's constitutional rights.

***Count Three: Eighth Amendment deliberate indifference claim against Defendant Puckett***

In Count Three, Plaintiff alleges Defendant Puckett acted with deliberate indifference in failing to provide Plaintiff with mental health treatment when he complained of auditory delusions on June 15, 2017. Defendant Puckett asserts he is entitled to summary judgment on this claim because Plaintiff did not suffer from a serious medical need and, in any event, he took action and

addressed Plaintiff's complaints.  The Court agrees.

As argued by Defendant Puckett, Plaintiff testified that he was not actually experiencing auditory delusions on June 15, 2017.  Rather, Plaintiff testified he only told Puckett he was having delusions so he would be able to leave his cell and speak with someone from mental health.  Although Plaintiff may have been in some distress when speaking with Puckett, there is no evidence Plaintiff was experiencing a serious medical need based on Plaintiff's deposition testimony.  Moreover, the Court finds Puckett responded to Plaintiff's (false) concerns in a reasonable manner.  Indeed, Puckett called for a supervisor and Defendant Lt. Williams responded.  Williams was a crisis team member at that time (Doc. 60-2 at ¶ 9).  As a crisis team member, Williams was trained to deal with inmates who have mental illness (Doc. 60-3 at ¶ 8).  As such, the Court finds Puckett acted appropriately in addressing Plaintiff's concerns by notifying Williams and, once Williams responded, Puckett was no longer involved in the incident involving Plaintiff.  For these reasons, Defendant Puckett is entitled to summary judgment as to Count Three.  The Court need not consider Defendant Puckett's qualified immunity argument as it finds that Defendant did not violate Plaintiff's constitutional rights.

### Expedited Motion for Stay of Order (Doc. 67)

In this motion, Plaintiff indicates that he believes the arguments set forth in his response to Defendants' motion for summary judgment may not be sufficient to overcome Defendants' motion.  Plaintiff writes that he depended entirely on "jailhouse lawyers" to assist him in preparing his pleadings and has been advised that he should seek leave to reopen discovery, file an amended complaint, and amend his response to summary judgment.

Plaintiff has not provided good cause to amend the scheduling order in this case.  Defendants filed their motion for summary judgment on July 28, 2020, and Plaintiff filed his

response on August 18, 2020. Plaintiff has not set forth any undiscovered evidence to warrant a reopening of discovery or an ability to amend his complaint or his response. Further, Plaintiff has failed to set forth any argument he would seek to incorporate to his already-filed summary judgment response. Plaintiff is bound by the deadlines in this case and the Court will not reopen discovery that has been closed for twelve months or allow Plaintiff to amend his summary judgment response that was filed five months prior to this motion because he believes he may not be successful. For these reasons, Plaintiff's motion is **DENIED**.

### Conclusion

Based on the foregoing, the Motion for Summary Judgment filed by Defendants Darren Williams, Ronald Bayler, Michael Hughes, Jeffrey Kidd, and Nick Puckett (Doc. 59) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's Expedited Motion for Stay of Order (Doc. 67) is **DENIED**. The Clerk of Court is directed to enter judgment in favor of Defendants Kidd, Bayler, and Puckett and against Plaintiff on all counts at the close of this case. The Clerk of Court is further directed to enter judgment in favor of Defendants Williams and Hughes as to Count Two at the close of this case.

Plaintiff shall proceed in this matter on the following claims:

Count One:   Eighth Amendment claim against Defendants Williams and Hughes for using excessive force against Plaintiff and/or failing to protect him from the unlawful use of force by prison officials on June 15, 2017.

**IT IS SO ORDERED.**

**DATED: February 24, 2021**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**